*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. S. E. LOVELACE, Minor.

UNPUBLISHED
July 1, 2021

No. 355288
Oakland Circuit Court
Family Division
LC No. 2019-877206-NA

Before: REDFORD, P.J., and BORRELLO and TUKEL, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her son MSE pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or abuse), (b)(*ii*) (parent had an opportunity to prevent injury or abuse), and (j) (reasonable likelihood the child will be harmed if returned to the home). Respondent argues that the trial court clearly erred by finding that termination of her parental rights to MSE was in MSE's best interests. We disagree and affirm.

## I. UNDERLYING FACTS

This case arises out of a car accident that resulted in the death of respondent's son ME. Respondent's then-boyfriend, Jermain Faraci, picked respondent up after work and was angry that she was taking so long to leave. Faraci yelled at respondent and appeared agitated as they drove to pick up respondent's sons, ME and MSE, from her sister's apartment. Faraci's vehicle did not have any car seats; ME and MSE were six and eight years old respectively, young enough that they should have been in car seats. Faraci drove at an exceedingly fast speed that, according to respondent, prevented her, ME, and MSE from buckling their seat belts. Faraci eventually drove through a blinking red light and was struck by another vehicle. The crash ejected respondent, ME, and MSE from the vehicle.[1]

___

[1] An investigation by the Waterford Police Department confirmed that ME and MSE were not in required booster seats or wearing seatbelts during the collision.

ME died from his injuries a few days later. ME's death led to a Children's Protective Services (CPS) investigation and the petition to terminate respondent's parental rights to MSE.[2] The trial court held a trial to determine whether it had jurisdiction over MSE. At trial, testimony established that respondent had a history of failing to properly secure her children in vehicles. The trial court took jurisdiction over MSE and found statutory grounds to terminate respondent's parental rights to MSE.

A best-interests hearing then established the respondent had a history of unstable employment and housing. The hearing additionally established that ME had previously been hit by a car while walking in the street with respondent, and respondent's older daughter, PFD, had also been hit by a car as a pedestrian. Respondent's court-ordered psychological evaluation uncovered many more concerning instances relating to respondent's ability to properly parent her children. Respondent had mental health issues she had not taken medication for since 2011; she also tested positive for cocaine in February 2019 and was in jail several times between 2008 and 2018.

The court psychologist recommended that MSE not be returned to respondent's care. She noted respondent's psychological evaluation and contrasted that with MSE's relative placement with his paternal grandmother, Debra Cottrell. When MSE arrived in Cottrell's care, he was behind on medical and dental care, needed glasses, and had schooling issues that needed to be addressed. Cottrell took care of MSE's medical, dental, and vision needs, and MSE was doing well in school. MSE stated he was happy with Cottrell, though he still wanted to return to respondent. Cottrell was willing to care for MSE permanently.

The court also heard testimony from the foster-care services specialist who had been assigned to MSE since the beginning of the case. She testified that respondent maintained weekly contact with MSE through visits which she supervised and that her interactions with MSE were generally positive. At the time of the hearing, respondent had a job, but she did not have her own housing. Rather, respondent was staying with her sister in their deceased mother's apartment while looking for her own housing. Respondent also voluntarily used services, including parenting classes and family counseling, with PFD. Like the court psychologist, the foster-care services specialist believed that MSE was doing well in his relative placement. Nevertheless, she recommended terminating respondent's parental rights to MSE due to respondent's lack of suitable housing, mental health issues, and history of poor decision making.

The trial court found that termination of respondent's parental rights was in MSE's best interests. It reasoned that respondent's long history of poor judgment, shown through her multiple incarcerations and lack of insight into how her actions harmed her children, culminating in ME's death, established an unacceptable safety risk for MSE if he was returned to respondent. The trial court then terminated respondent's rights to MSE. This appeal followed.

---

[2] At the time, respondent had three living minor children, AMM, PFD, MSE, and an adult daughter, Victoria Wood. Only respondent's parental rights to MSE are at issue on appeal.

## II. STANDARD OF REVIEW

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests are reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

## III. ANALYSIS

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. When the trial court makes its best-interests determination, it may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83. In cases concerned with multiple children, the trial court must determine each child's interests individually. *In re Olive/Metts*, 297 Mich App at 43-44. But a trial court is not required to make individual and redundant best-interest findings for each child when the best interests of the children do not significantly differ. *In re White*, 303 Mich App at 715-716. Finally, "[a] child's placement with relatives is a factor that the trial court is required to consider" when making its best-interests determination, *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), and "a child's placement with relatives weighs against termination." *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010).

Respondent has a bond with MSE, she adhered to her case service plan, and she regularly attended supervised visits with MSE. But there are serious concerns regarding respondent's ability to keep MSE safe if he was returned to her care. This case arose because respondent's son, ME, was killed in a car accident after he and MSE were completely unrestrained in the backseat. Respondent's children not being adequately restrained in a vehicle has, unfortunately, become something of a trend with her. Before the tragic events that led to ME's death, respondent had already been ticketed twice for not properly restraining her children in a vehicle. One of those events resulted in respondent spending 10 days in jail. But respondent's inability to properly restrain her children in vehicles continued and ultimately contributed to ME's tragic death.

Respondent's failure to protect her children extended beyond whether they were properly restrained in vehicles. For example, ME was hit by a vehicle while walking in the street with respondent. Additionally, PFD was also hit by a vehicle; while respondent evidently was not present for that event, it nevertheless continues a troubling trend of respondent's family getting in vehicular accidents. Additionally, Faraci once hit MSE and respondent did not object to Faraci's conduct. Finally, respondent has a criminal history of assault and she once got in a knife fight with PFD after finding PFD naked with PFD's boyfriend. Respondent cut PFD during the ensuing altercation.[3]

MSE's need for permanency, stability, and finality also weighs against his return to respondent's care. Respondent has a long history of housing instability; respondent's adult daughter, Victoria Wood, testified that they may have lived in nearly 10 different places while she lived with respondent. At the time of the hearing, respondent did not have suitable housing for MSE because she was staying with her sister in a two-bedroom apartment, although respondent did testify MSE would get one of the bedrooms if MSE was returned to respondent before respondent found her own housing. But there were concerns over whether respondent could get her own housing because of wait lists and her eviction history. In contrast, at Cottrell's house, MSE has his own bedroom and another room in which to play. Additionally, Cottrell tended to MSE's health, dental, and vision needs, which respondent had not done; MSE was also doing well in school. Finally, Cottrell said she could care for MSE permanently.

Respondent contends that the fact her parental rights to PFD were not terminated shows that respondent is fit to parent MSE, or at least that she would be with further services. This argument lacks merit. For one thing, a court should consider the best interests of children separately when the children do not significantly differ. *In re White*, 303 Mich App at 715-716. Here, at trial, the trial court found that PFD's and MSE's interests were different when it declined to assert jurisdiction over PFD as to respondent because PFD's age meant she did not share the same risk of physical harm as MSE. Additionally, respondent's parenting of PFD was not indicative of an ability to appropriately parent MSE. Indeed, as discussed earlier, respondent got into a knife fight with PFD when respondent found PFD naked with her boyfriend. Furthermore, PFD became pregnant, spent time incarcerated for breaking and entering and probation violations, and respondent sent PFD to live with the baby's paternal grandparents after PFD's baby was born. MSE is younger than PFD and, unlike PFD, he is not a parent. As such, the trial court did not err by considering the needs of MSE and PFD separately. See *id*.

Respondent additionally argues that MSE's relative placement weighs against termination of her parental rights. She is correct. See *In re Mason*, 486 Mich 142, 164. The trial court specifically addressed this factor and concluded, without explanation, that it was overcome by the evidence presented. But it is easy to see why. As discussed, respondent had significant and longstanding issues that would have made it unwise to return MSE to her care. Additionally, with

---

[3] We acknowledge that AMM was shot, but this occurred when he was living with Wood and appears to be an unfortunate incident in which AMM was in the wrong place at the wrong time. As such, we do not believe this event should be considered when determining whether termination of respondent's parental rights to MSE was in MSE's best interests.

respondent, MSE repeatedly moved and was frequently cared for by relatives. In contrast, with Cottrell, MSE has stability and permanency in his housing, his medical needs are being tended to, and he is doing well in school.

Finally, respondent's psychological evaluation weighs in favor of terminating her parental rights to MSE. The evaluation established that respondent has mental health issues she had not treated since 2011. Respondent's mental health disorders include bipolar disorder, anxiety disorder, mood disorder, traumatic brain injury, posttraumatic stress disorder, and bereavement. Respondent also has a substance abuse history that includes a positive cocaine test in February 2019. The psychological evaluation concluded that respondent had a poor prognosis for gaining insight into and correcting her behavior as it relates to keeping her children safe.

The trial court considered all of this evidence and concluded that termination of respondent's parental rights to MSE was in his best interests. We are not definitely and firmly convinced that it erred by doing so.

## IV. CONCLUSION

For the reasons stated in this opinion, we affirm the trial court's order terminating respondent's parental rights to MSE.

/s/ James Robert Redford
/s/ Stephen L. Borrello
/s/ Jonathan Tukel